UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
---------------------------------------------------------------X
CHERYL LAPAN and MICHELLE SHUTT,
individually and on behalf of all other persons          CIVIL ACTION
similarly situated,

                                                         Case No.: 1:13-cv-11390-RGS

                        Plaintiffs,


                    -against-


DICK'S SPORTING GOODS, INC.,

                        Defendant.
---------------------------------------------------------------X




**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE**

KLAFTER OLSEN & LESSER LLP          HEPWORTH, GERSHBAUM & ROTH PLLC
Seth R. Lesser*                     Marc S. Hepworth*
Fran L. Rudich                      Charles Gershbaum*
Rachel E. Berlin*                   David A. Roth*
Michael J. Palitz*                  Mathew A. Parker*
Two International Drive, Suite 350   192 Lexington Avenue, Suite 802
Rye Brook, New York 10573           New York, New York 10016
Telephone:  (914) 934-9200          Telephone: (212) 545-1199
Facsimile:  (914) 934-9220          Facsimile:  (212) 532-3801



*Attorneys for Plaintiffs*

* Admitted *pro hac vice*

# TABLE OF CONTENTS

I.    PROCEDURAL HISTORY AND PERTINENT FACTS ................................... 1

  A.   The Nature of Plaintiffs' Legal Claims ......................................................... 1

  B.   Statement of Facts ........................................................................................... 2

  C.   The Deposition Testimony of Dick's Corporate Representative, the Two Deposed Plaintiffs, and the Documentary Evidence Demonstrate that ASMs are Similarly Situated for First Stage Conditional Certification and Notice ......................................... 3

     1.   The Duties and Responsibilities Are the Same for All Dick's ASMs ........................... 3

     2.   Dick's Creates Uniform Training Materials for All ASMs Nationwide ...................... 6

     3.   Dick's Stores Operate Pursuant to the Same Corporately Derived Policies ................. 7

     4.   The Compensation Method and Classification is the Same for All Dick's ASMs ........ 8

II.    ARGUMENT ....................................................................................................... 8

  A.   Conditional Certification Under the FLSA .................................................... 8

  B.   Plaintiffs' Burden is Minimal at the Notice Stage ....................................... 11

  C.   Plaintiffs' FLSA Claims Should be Conditionally Certified ......................... 15

  D.   The Court Should Compel Dick's to Produce ASMs' Contact Information ................. 19

  CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alli v. Boston Market*, 2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) ........................ 18

*Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484 (S.D.N.Y. 2009) ........................ 17

*Aros v. United Rentals, Inc.*, 269 F.R.D. 176 (D. Conn. 2010) .................................................. 18

*Basch v. Ground Round, Inc.,* 139 F. 3d 6 (1st Cir. 1998)..... ....................................... 9

*Bishop v. AT&T Corp.*, 256 F.R.D. 503 (W.D. Pa. 2009) ............................................. 14

*Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009) ............... 15, 19

*Creely v. HCR Manorcare*, 2011 U.S. Dist. LEXIS 61376 (N.D. Ohio June 9, 2011) ............... 18

*Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090
   (S.D.N.Y. Oct. 4, 2006) ...................................................................... 12, 13, 18, 19

*Evans v. Lowe's Home Ctrs., Inc.,* 2004 U.S. Dist. LEXIS 15716 (M.D. Pa. June 17, 2004) ...... 12

*Ferreira v. Modell's Sporting Goods, Inc.,* 2012 U.S. Dist. LEXIS 100820
   (S.D.N.Y. July 16, 2012) ........................................................................ 15, 19

*Goodman v. Burlington Coat Factory*, 2012 U.S. Dist. LEXIS 166910
   (D.N.J. Nov. 20, 2012)…………………………………………………………..14, 15, 17 18

*Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010)….10, 14

*Griffiths v. Fordham Financial Management,* 2013 U.S. Dist. LEXIS 72909
   (S.D.N.Y. May 22, 2013) ......................................................................... 17

*Heitzenrater v. OfficeMax, Inc.,* 2014 U.S. Dist. LEXIS 13828
   (W.D.N.Y. Feb. 1, 2014)………………………………………………............................16

*Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F. 3d 1208 (11th Cir. 2001) .......................................... 17

*Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249 (S.D.N.Y. 1997)…………………………………….13

*In re HCR Mancorcare, Inc.*, 2011 U.S. App. LEXIS 26241 (6th Cir. Sept. 29, 2011) ............... 11

*In re Penthouse Executive Club Comp. Litig.*, 2010 U.S. Dist. LEXIS 114743
   (S.D.N.Y. Oct. 27, 2010) ......................................................................... 17

*Jason v. Falcon Data Com, Inc.*, 2011 U.S. Dist. LEXIS 77352 (E.D.N.Y. July 18, 2011) ........ 13

*Johnson v. VCG Holding Corp.,* 802 F. Supp. 2d 227 (D. Me. 2011) .................................... 10, 17

*Kane v. Gage Merch Servs.,* 138 F. Supp. 2d 212 (D. Mass. 2001) ...................................... *passim*

*Krstic v. J.R. Contr. & Envtl. Consulting*, 2010 U.S. Dist. LEXIS 9478
(D.N.J. Jan. 28, 2010) ......................................................................................... 13

*Litz v. Saint Consulting Group, Inc.,* 2012 U.S. Dist. LEXIS 20586 (D. Mass. Feb. 17, 2012) .. 11

*McKee v. PetSmart, Inc.,* 2013 U.S. Dist. LEXIS 174123 (D. Del. Dec. 9, 2013) ...................... 16

*Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233 (11th Cir. 2008) .......................... 11, 12, 17

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) .............................................................. *passim*

*Parker v. NutriSystem*, 2008 U.S. Dist. LEXIS 74896 (E.D. Pa. Sept 26, 2008); ....................... 14

*Parks v. Dick's Sporting Goods, Inc.,* 2007 U.S. Dist. LEXIS 20949
(W.D.N.Y. Mar. 21, 2007) ........................................................................... 14, 15, 19

*Perez v. Prime Steak Rest. Corp.,* 2013 U.S. Dist. LEXIS 115119 (D.P.R. Aug. 12, 2013) .. 10, 20

*Poreda v. Cascade*, 532 F. Supp. 2d 234 (D. Mass. 2008) .................................................... 10, 11

*Prescott v. Prudential Ins. Co.,* 729 F. Supp. 2d 357 (D. Me. July 27, 2010) ................. 10, 11, 12

*Ravenell v. Avis Budget Car Rental, LLC.* 2010 U.S. Dist. LEXIS 72563
(E.D.N.Y. July 19, 2010) ................................................................................... 16, 19

*Reeves v. Alliant Techsystems, Inc.,* 77 F. Supp. 2d 242 (D.R.I. 1999) ……………………….9, 11

*Ruffin v. Avis Budget Car Rental, LLC,* 2012 U.S. Dist. LEXIS 89651
(D.N.J. June 28, 2012) ……………………………………………………………….17, 19

*Saunders v. Getchell Agency,* 2014 U.S. Dist. LEXIS 17480 (D. Me. Feb. 12, 2014) .......... *passim*

*Stillman v. Staples, Inc.,* 2008 U.S. Dist. LEXIS 32853 (D.N.J. Apr. 22, 2008) ……………16, 18

*Stillman v. Staples, Inc.,* 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) ......................... 16

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189 (3d Cir. 2011) …………………...10, 11, 12

*Trezvant v. Fidelity Employer Servs. Corp.,* 434 F. Supp. 2d 40 (D. Mass. 2008)…………10, 13

*Wise v. Patriot Resorts Corp.* 2006 U.S. Dist. LEXIS 97992 (D. Mass. Feb. 15, 2006) ...... *passim*

*Wright v. Lehigh Valley Hosp.& Health Network*, 2011 U.S. Dist. LEXIS 5363
(E.D. Pa. Jan. 20, 2011)…………………………………………………………………14

*Zaniewski v. PRRC Inc*., 848 F. Supp. 2d 213 (D. Conn. 2012)........................................... 15, 19

*Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527 (3d Cir. 2012)…………………………………..12

## Statutes and Rules

29 U.S.C. § 216(b)………………………………………………………………………..*passim*

29 U.S.C. § 256(b)………………………………………………………………………..9

Fed. R. Civ. P. 23…………………………………………………………………………9

## Other Authorities

ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE
§ 1807 (3d ed. 2005)………………………………………………………………………9

Plaintiffs Cheryl Lapan and Michelle Shutt, along with six other assistant store managers ("ASMs"), submit this memorandum in support of their Motion for Conditional Certification and Notice pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs meet the "modest factual showing" standard for their "lenient burden" for notice of this archetypal retail FLSA misclassification case so that additional ASMs of Defendant Dick's Sporting Goods, Inc. (hereinafter "Defendant" or "Dick's"), can be promptly notified of their right to join this lawsuit.[1] *Kane v. Gage Merch Servs.,* 138 F. Supp. 2d 212 (D. Mass. 2001).

## I.   PROCEDURAL HISTORY AND PERTINENT FACTS

### A.   *The Nature of Plaintiffs' Legal Claims*

On June 10, 2013, Plaintiffs filed the original collective action Complaint for unpaid overtime, alleging that Dick's wrongfully misclassified them as exempt from overtime pay under the FLSA because they primarily performed non-managerial work.  Complaint (ECF Doc. 1). After an agreed-upon amendment that added parallel putative class claims under Massachusetts state law, Dick's answered the First Amended Complaint ("FAC"; ECF. Doc. 18), on August 29, 2013. (ECF Doc. 19).  Since then, six more individuals have filed opt-in consents to join this case pursuant to 29 U.S.C. § 216(b).

Pursuant to the Court-approved parties' Joint Statement, (ECF Doc. 23), discovery is proceeding in two phases.  Limited first-phase discovery, addressing conditional certification

---

[1] Deposition and declaration exhibits will be cited by last name, Rudich Declaration exhibit number, and relevant page number (*e.g.*, "Doan (Ex. __) at ___").  ASMs are divided into Hardlines Managers, Softlines Managers, and Sales Support Managers, and all are referred to collectively by Dick's as "assistant managers" or "sales managers."  *See, e.g.,* Doan (Ex. A) at 12, 16, 18, 29, 32-33, 35, 80.  All three of the positions are encompassed by the Plaintiffs and Opt-ins here.  This motion includes Dick's ASMs in the United States, except in California and New Mexico, where ASMs are classified by Dick's as non-exempt.  *Id.* at 50-51.  The putative collective action period is from June 10, 2010 to the present.

discovery, has consisted of a Rule 30(b)(6) deposition of Dick's corporate representative, the deposition of the two named Plaintiffs, and first-stage interrogatories and document productions.

### B. Statement of Facts

Dick's is a "full-line sports and fitness specialty omni-channel retailer" and operates 558 stores in 46 states throughout the United States. *See* www.dickssportinggoods.com (follow "Investor Relations" hyperlink). Dick's corporate headquarters directs the operations of the company from the top down. Doan (Ex. A) at 41-47 (detailing corporate structure). As is particularly relevant to this motion, corporate headquarters decides the classification of employees at Dick's. However, despite Mr. Doan's investigation and conversations with several high level corporate employees, including Dick's President and COO, no one at Dick's is aware of when the classification for ASMs was made, "and there had been no studies done [regarding] why [the classification] was determined." *Id.* at 18-19.

Dick's is organized into typical chain store departments dedicated to, among others, Marketing, Merchandising, Finance, Human Resources, Store Operations, and Legal. *Id.* at 38. Dick's unified management of its stores is directed through the President and Senior Vice President of Store Operations. Dick's stores are divided into 58 districts, 8 regions, or 2 zones. *Id.* at 42-43. ASMs report to the Store Managers, who report to District Managers. District Managers report to Regional Vice Presidents, who report to Zone Vice Presidents, who, in turn, report to the Senior Vice President of Store Operations. *Id.* at 45-47. Dick's strives for uniformity in operations and issues manuals with operating and training policies that apply unvaryingly to ASMs at all retail locations nationwide. *Id.* at 91-92.

The eight Plaintiffs worked as ASMs at Dick's stores in six states: Cheryl Lapan (Massachusetts), Michelle Shutt (Pennsylvania), Jeffrey Alan Caldwell (Massachusetts), Aaron

M. Williams (Massachusetts), Aaron Bell (Kansas), Bradley W. Binder (South Carolina), Patrick J. Kaczmarczyk (New York), and Medric Belmore (Rhode Island). They allege that Dick's violated the FLSA by willfully misclassifying them as exempt and failing to pay them, and other similarly situated ASMs, overtime pay for all hours worked over 40 hours in a workweek. FAC (ECF Doc. 18) at ¶¶ 26, 35. Dick's counters that "it acted properly in its pay and classification practices." Amended Answer (ECF Doc. 19, Fourth Defense).

### C. The Deposition Testimony of Dick's Corporate Representative, the Two Deposed Plaintiffs, and the Documentary Evidence Demonstrate that ASMs are Similarly Situated for First Stage Conditional Certification and Notice

#### 1. The Duties and Responsibilities Are the Same for All Dick's ASMs

Dick's Rule 30(b)(b) corporate representative admitted that all ASMs' responsibilities are the same, and that the ASM job description applies to all ASMs nationwide. Doan (Ex. A at 53-54, 129-31). His testimony alone is sufficient to support Section 216(b) certification:

> Q: Are all ASMs classified as exempt in all Dick's stores nationwide other than California and New Mexico?
> A: Yes.
> Q: […] And are all the ASMs classified as exempt regardless of the zone they're in?
> A: Yes.
> Q: And are all ASMs classified as exempt regardless of the region they're in?
> A: Yes.
> Q: And are all ASMs classified as exempt regardless of the climate designation they're in?
> A: Yes.
> Q: And are all ASMs classified as exempt regardless of the store they're in?
> A: Yes.
> Q: And are all ASMs classified as exempt regardless of the media they're in as we discussed earlier?
> A: Sure. Yes.
> Q: And are all ASMs classified as exempt regardless of the size store they're in?
> A: Yes.
> Q. And are all ASMs classified as exempt regardless of the type of building [such as] a stand-alone building or part of a strip mall or part of a mall?
> A. Yes.
> Q. Are all ASMs classified as exempt regardless of the number of employee in the store?

A.      Yes.

Q.      Are all ASMs classified as exempt regardless of the sales volume of the store?

A.      Yes.

Q.      Are all ASMs classified as exempt regardless of the experience of the ASM?

A.      Yes.

Q.      Are all ASMs classified as exempt regardless of their training?

A.      Yes.

Q.      Are all ASMs classified as exempt regardless of the store manager?

A.      Yes.

Q.      […] Regardless [...] as to what the assistant store manager is doing [in the store], are they classified as exempt?

A.      Yes.

Q.      Are the ASMs classified as exempt regardless of the shift they work?

A.      Yes.

*Id*. at 51-55.

In classifying all ASMs as exempt without considering any individual factors, Dick's never conducted any time studies or audits to evaluate whether the company's blanket exemption classification is supported by the actual duties performed by ASMs. *Id.* at 55-59, 125.

The deposition testimony of the two named Plaintiffs confirms the similarities of ASMs' job duties. Although this is ultimately a merits point beyond the scope of the present motion, it is not insignificant that the testimony from ASMs confirms they spent the majority of their time doing the work of hourly employees. Cheryl Lapan spent 95% of her time performing hourly tasks. (Lapan (Ex. B) at 183, 203, 208, 315). Michelle Shutt spent 90% of her workday performing non-exempt tasks, likewise testifying that she "didn't get to manage." (Shutt (Ex. C) at 81, 263). She also explained: "[I] saw [other ASMs] out on the floor when I was ringing on a cash register. […] I would see them re-stocking shelves, as I did, and I would see them cleaning bathrooms, as I did, and putting out freight." *Id.* at 336. The other Plaintiffs' declarations further support these ultimate merits contentions. *See* Belmore (Ex. D) at ¶ 3 ("The tasks I performed as a Softlines Manager were very similar to the tasks performed by keyholders and department leads, who were paid at an hourly rate."); Caldwell (Ex. E) at ¶ 5 (As an ASM "I

was lifting heavy boxes and unloading freight.  As a result of this, I injured my back and underwent back surgery.");  Williams (Ex. F) at ¶ 2 ("When I became a Sales Support Manager [after being an hourly associate], I did not notice much of a change in my duties and responsibilities because I mostly assisted or filled in for hourly associates.");  Binder  (Ex. G) at ¶ 4  ("As an ASM at Dick's Sporting Goods, I spent approximately 85- 95% of my time percent of my time performing hourly tasks that were assigned to me.");  Kaczmarczyk (Ex. H) at ¶ 4 (spent 90% of his time as an ASM performing hourly tasks);  Bell (Ex. I) at ¶ 5 (same).  The primary hourly work to which ASMs testified to performing included:

- Engaging in customer service;[2]
- Stocking and organizing shelves;[3]
- Operating the cash register;[4]
- Unloading freight and trucks;[5]
- Pricing, tagging, or  sorting merchandise;[6]
- Hanging and folding clothes;[7]

---

[2] Lapan (Ex. B) at 209 (helped customers by ringing on the register), 216 (called customers as directed by the Store Manager if there was customer service issue, and then reported back to Store Manager), 313, 322-23 (built bikes for customers);  Shutt (Ex. C) at 350;  Bell (Ex. I) at ¶ 5;  Belmore (Ex. D) at  ¶ 2;  Caldwell (Ex. E) at  ¶ 4;  Williams (Ex. F) at  ¶ 2; Binder at (Ex. G) ¶4; Kaczmarczyk (Ex. H) at ¶4.

[3] Lapan (Ex. B) at 168, 313-14;  Shutt (Ex. C) at 332, 336, 350-51;  Bell (Ex. I) at ¶ 5;  Belmore (Ex. D) at  ¶ 2;  Caldwell (Ex. E) at  ¶ 4;  Williams (Ex. F) at  ¶ 2; Binder at (Ex. G) ¶ 4; Kaczmarczyk (Ex. H) at ¶ 4.

[4] Lapan (Ex. B) at 167, 207, 209, 274, 313; Shutt (Ex. C) at 54, 66, 81-3, 104-05, 203 ("spent long days on ringing register"), 258 (was "constantly covering shifts and ringing on a cash register"), 263 (complained to Store Manager about how much time she spent ringing register, was told "it is what it is"), 314, 317 (could not manage because she was ringing on the register), 335-35 (complained with other ASMs about ringing on the register), 336;  Belmore (Ex. D) at  ¶ 2;  Caldwell (Ex. E) at  ¶ 4;  Williams (Ex. F) at  ¶ 2; Binder at (Ex. G) ¶ 4; Kaczmarczyk (Ex. H) at ¶ 4.

[5] Lapan (Ex. B) at 313;  Shutt (Ex. C) at 89 ("before the store opened we would be doing freight, putting out freight, trying to get as much of it put out as we could before the store opened), 265, 336, 350 (unpacked freight);  Bell (Ex. I) at ¶ 5;  Belmore (Ex. D) at  ¶ 2;  Caldwell (Ex. E) at  ¶ 4;  Williams (Ex. F) at  ¶ 2; Binder (Ex. G) ¶ 4; Kaczmarczyk (Ex. H) at ¶ 4.

[6] Lapan (Ex. B) at 79, 121, 168 (priced merchandise, filled shoes), 206, 314;  Shutt (Ex. C) at 38-9 (put tags on clothing), 217 (tagged merchandise), 224 (same), 308 (same), 352 (priced merchandise);  Bell (Ex. I) at ¶ 5;  Caldwell (Ex. E) at  ¶ 4;  Williams (Ex. F) at  ¶ 2; Binder at (Ex. G) ¶ 4; Kaczmarczyk (Ex. H) at ¶ 4.

[7] Lapan (Ex. B) at 167-68 ("we would be sensor-tagging, hanging and folding, and moving fixtures around the store"), 314;  Bell (Ex. I) at ¶ 5;  Belmore (Ex. D) at ¶ 2;  Caldwell (Ex. E) at  ¶ 4; Williams (Ex. F) at  ¶ 2; Binder at (Ex. G) ¶ 4; Kaczmarczyk (Ex. H) at ¶ 4.

- Setting up planograms ("game plans");[8]
- Taking out the garbage;[9]
- Cleaning the store;[10] and
- Performing merchandise recovery.[11]

Plaintiffs similarly testified that, as ASMs, they lacked the authority to set the labor budget of the store, decide what products to sell in the store, decide where to place products to sell in the store, set the rate of pay for hourly associates, set the price of merchandise, set the dress code, or change corporate policies.[12]

In sum, and although it will be a second-stage merits matter, Plaintiff Shutt captured the heart of what this case is about when she testified that ASMs "were glorified cashiers and we were constantly cleaning the stores and constantly overworked and never got paid any overtime and constantly had to cover shifts for hourly associates if they called off." (Shutt (Ex. C) at 333).

2.  *Dick's Creates Uniform Training Materials for All ASMs Nationwide*

Dick's 30(b)(6) representative also testified that Dick's corporate Learning Department generated one training program that all ASMs nationwide must take, called the "On-Boarding

---

[8] Lapan (Ex. B) 100-01, 166-67 ("if [another store] was behind on a game plan […] they would send me there to help them"), 167 ("I would work overnight and set game plans"), 172-73 (for a footwear game plan "we would be moving shoe boxes from one area to the next and filling socks and making sure that all of the display shoes had a sign on them, and then we would sweep and mop the footwear deck"), 203-04 ("I think the company expected the hardlines managers to complete the game plans."), 296-97, 305-06 ("I was required to take pictures of game plans that I had executed to ensure that every detail of the game plan had been followed"), 317 (not allowed to deviate from corporate's instructions regarding how to complete game plan), 313; Shutt (Ex. C) at 350 (set up displays and planograms); Bell (Ex. I) at ¶ 5; Belmore (Ex. D) at ¶ 2; Caldwell (Ex. E) at ¶ 4; Williams (Ex. F) at ¶ 2; Binder at (Ex. G) ¶ 4; Kaczmarczyk (Ex. H) at ¶ 4.

[9] Lapan (Ex. B) at 313-14; Shutt (Ex. C) at 351; Bell (Ex. I) at ¶ 5; Belmore (Ex. D) at ¶ 2; Caldwell (Ex. E) at ¶ 4; Williams (Ex. F) at ¶ 2.

[10] Lapan (Ex. B) at 171 (helped clean store), 172-73 (sweep and mop floor), 313; Shutt (Ex. C) at 90, 91 ("Everyone knew what the store needed to look like, so if we had the chance we would try to clean up as best as we could"), 92, 333 (was "constantly cleaning the stores"), 336 (cleaned bathrooms), 350-351; Bell (Ex. I) at ¶ 5; Belmore (Ex. D) at ¶ 2; Caldwell (Ex. E) at ¶ 4; Williams (Ex. F) at ¶ 2.

[11] Lapan (Ex. B) at 171 (filled gun wall, cases of ammunition, and fishing poles), 313; Shutt (Ex. C) at 251; Belmore (Ex. D) at ¶ 2; Caldwell (Ex. E) at ¶ 4; Williams (Ex. F) at ¶ 2.

[12] Lapan (Ex. B) at 315-16; Shutt (Ex. C) at 353; Belmore (Ex. D) at ¶ 5; Caldwell (Ex. E) at ¶ 7; Williams (Ex. F) at ¶ 3; Binder (Ex. G) at ¶ 7; Kaczmarczyk (Ex. H) at ¶ 7; Bell (Ex. I) at ¶ 4.

Program." (Doan (Ex. A) at 13, 91). It consists of various modules, and is accessible to all ASMs on Dick's company-wide intranet. *Id*. at 90-99. As part of the On-Boarding Program, all ASMs follow a corporately derived weekly training plan and schedule. *Id*. at 106-07. All ASMs nationwide are also expected to follow "GAME FACE," a corporate training policy and selling program. *Id*. at 108-09.

### 3. Dick's Stores Operate Pursuant to the Same Corporately Derived Policies

Dick's corporate documents further lay out the comprehensive corporate procedures and policies that largely define the ASM job duties. For example, Dick's corporate headquarters created the "Salaried Associate Handbook," a set of corporate rules and procedures that apply to all ASMs at Dick's. *Id*. at 99-100. The corporately derived "Store Operations Manual," is used in all stores nationwide, is accessible to all ASMs on Dick's company-wide intranet, and contains "all the policies and procedures" for the stores, from "handling the freight, handling of cash, handling of guns," "cash office procedures," and the like. *Id*. at 72-75, 78-79. The Manual consists of 34 chapters (each with its own lengthy Table of Contents) and is over a thousand pages.[13] The comprehensive nature of what it dictates is captured in just a few of the Tables of Contents that highlight the high degree of common corporate control at Dick's over all facets of store operations, including employee appearance, stockroom organization, physical inventory procedures, loss prevention policies, store opening and closing procedures, weekly and monthly tasks, and cash office procedures, just to name a few. *See* Ex J.

Dick's corporate headquarters also created a "Visual Playbook" which "serves as a reference to ensure consistency throughout the entire Dick's chain," and applies to all stores and ASMs nationwide. *Id.* at 80-81. Furthermore, all ASMs are expected to sign, read, and adhere

---

[13] Plaintiffs can provide the full Store Operations Manual should the Court wish to review its entirety.

to the Company's "Code of Conduct," which contains Dick's policies and procedures, because, as Mr. Doan explained, ASMs "are expected to operate a certain way within the organization." *Id*. at 77-78, 101.  Not surprisingly, the testimony is also clear that Plaintiffs, like all ASMs, were required to follow Dick's policies and were not asked to provide any input into these policies.[14]

> ### 4.   *The Compensation Method and Classification is the Same for All Dick's ASMs*

Finally, all Dick's ASMs nationwide are paid on a salaried basis without overtime, and are eligible for the same 401(k) plans, medical, vision, and dental insurance plans, and are subject to the same holiday and vacation policies.  *Id*. at 59-62, 97-98; Ex. K at DSG0072791-92. Dick's maintains a common corporate policy of classifying all ASMs as exempt from the FLSA's overtime provisions while expecting them to work "between 45 and 50 hours" per workweek with no additional compensation.  *Id*. at 48, 62.

## II.   **ARGUMENT**

### A.  *Conditional Certification under the FLSA*

Plaintiffs bring this collective action on behalf of themselves and other ASMs pursuant to FLSA Section 16(b), which allows private civil actions to be maintained "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  FLSA collective actions are a "unique species of group litigation" in which each plaintiff "desiring to be included in the litigation must 'opt-in' to the suit by filing a written

---

[14] Lapan (Ex. B) at 317 (ASMs "were not allowed to - - to deviate [from] any sort of instruction that we were given from corporate policy or game plan or make suggestions of how things should be different and exactly the way that they wanted things set up was exactly the way that we set it up"); Shutt (Ex. C) at 191 (everyone had to follow corporate policy), 307 (had to follow corporate policies and procedures); 352 (had to do exactly what Dick's policy set forth), 353 (couldn't change corporate policy);  Bell (Ex. I) at ¶ 7; Belmore (Ex. D) at  ¶ 4; Caldwell (Ex. E) at  ¶ 8; Williams (Ex. F) at  ¶ 6); Binder (Ex. G) at ¶ 7; Kaczmarczyk (Ex. H) at ¶ 7.

consent with the court." ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1807, 468-69 (3d ed. 2005); *see also Basch v. Ground Round, Inc.,* 139 F. 3d 6, 10 (1st Cir. 1998) (describing opt-in procedure).  Thus, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b); MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1807, 468-69.

As observed by the Supreme Court, Section 216(b) collective actions are beneficial because plaintiffs are provided with "the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989); *see also Reeves v. Alliant Techsystems, Inc.,* 77 F. Supp. 2d 242, 246 (D.R.I. 1999).  District courts have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way."  *Hoffman-La Roche*, 493 U.S. at 170-71. Consistent with this responsibility, district courts facilitate the notice and joinder process by "conditionally certifying" the lawsuit, and enable other current and former employees to be notified of its existence.  *See, e.g., Myers v. Hertz*, 624 F.3d 537, 554 (2d. Cir. 2010); *Saunders v. Getchell Agency,* 2014 U.S. Dist. LEXIS 17480, at *16 (D. Me. Feb. 12, 2014); *Wise v. Patriot Resorts Corp.* 2006 U.S. Dist. LEXIS 97992 (D. Mass. Feb. 15, 2006).

Unlike Rule 23 class actions, the commencement of a FLSA collective action does not toll the statute of limitations for potential opt-in plaintiffs.  *See* 29 U.S.C. § 256(b).  As such, time is of the essence for potential opt-ins.  As explained by the Supreme Court:

> Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some time later.
> ***

> The court is not limited to waiting passively for objections about the manner in
> which the consents were obtained. By monitoring preparation and distribution of
> the notice, a court can ensure that it is timely, accurate, and informative. Both the
> parties and the court benefit from settling disputes about the content of the notice
> before it is distributed.

*Hoffman-La Roche*, 493 U.S. at 171-72 (internal citations omitted); *see also Poreda v. Cascade*,

532 F. Supp. 2d 234, 241 (D. Mass. 2008) (granting plaintiff's motion for conditional

certification and recognizing that notice should be given to the collective action members since

their "rights [under the FLSA] may expire"); *Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist.

LEXIS 35451, at *30 (E.D.N.Y. Apr. 9, 2010) ("early certification and notice are favored in

order to protect plaintiffs' rights"). Courts thus "should treat the initial decision to certify and

the decision to notify potential collective action members as synonymous." *Symczyk v. Genesis*

*HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, *Genesis*

*Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013).

Although the First Circuit itself has not rendered a decision setting forth the requirements

for Section 216(b) certification, "[t]he general practice of district courts within the First Circuit,

[however], has been to adopt a 'two-tiered' approach to certification of collective actions under

the FLSA." *Perez v. Prime Steak Rest. Corp.,* 2013 U.S. Dist. LEXIS 115119 (D.P.R. Aug. 12,

2013) (citing *Johnson v. VCG Holding Corp.,* 802 F. Supp. 2d 227, 233 (D. Me. 2011)); *see also*

*Trezvant v. Fidelity Employer Servs. Corp.,* 434 F. Supp. 2d. 40, 43 (D. Mass. 2008) (explaining

that the majority of district courts in the First Circuit have adopted the "two-tier" approach);

*Saunders*, 2014 U.S. Dist. LEXIS 17480 at *18 (using a "two-stage process"); *Wise,* 2006 U.S.

Dist. LEXIS 97992 (using a "two-step" approach); *Prescott v. Prudential Ins. Co.,* 729 F. Supp.

2d 357 (D. Me. July 27, 2010) (affirming two tiered approach); *Reeves,* 77 F. Supp. 2d 242

(same); *Poreda,* 532 F. Supp. 2d 234 (same). All four Courts of Appeals that have addressed the

issue have approved the two-stage process. *See, e.g., Hertz*, 624 F.3d at 554-55 (Second Circuit); *Symczyk*, 656 F.3d at 189 (Third Circuit); *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1261 (11th Cir. 2008); *In re HCR Mancorcare, Inc.*, 2011 U.S. App. LEXIS 26241, at *3 (6th Cir. Sept. 29, 2011) ("[w]e have . . . implicitly upheld" two-step approach), *cert. denied*, 132 S. Ct. 1146 (2012).

### B. *Plaintiffs' Burden is Minimal at the Notice Stage*

The evidentiary standard for the first step of deciding whether to authorize notice is "lenient" and "typically results in conditional certification of a representative [collective]." *Kane*, 138 F. Supp. 2d at 214; *see also Prescott*, 729 F. Supp 2d at 364 (first stage standard is "'not particularly stringent, 'fairly lenient,' 'flexib[le],' [and] 'not heavy'") (internal citations omitted); *Saunders*, 2014 U.S. Dist. LEXIS 17480 at *23-24 (plaintiffs have a "light burden" during first stage).

"[T]he plaintiff must make 'a modest factual showing' that she and other employees, with similar but not identical jobs, suffered from a common unlawful policy or plan." *Prescott*, 729 F. Supp. 2d at 364. At this stage, there is an "understandably generous attitude of courts towards permitting plaintiffs to make this notification." *Wise*, 2006 U.S. Dist. LEXIS 97992, at *2. Accordingly, "[a]t this initial 'notice stage,' the court usually relies only on the pleadings and any affidavits which have been submitted." *Kane,* 138 F. Supp. at 214 (citations omitted).

The burden at this stage is minimal because the court is only "mak[ing] an initial assessment of whether the potential [collective] should receive notice of the pending action." *Litz v. Saint Consulting Group, Inc.,* 2012 U.S. Dist. LEXIS 20586, at * 2 (D. Mass. Feb. 17, 2012). The first stage is not the appropriate time to undertake the more detailed second stage analysis of determining whether the lawsuit ultimately will proceed as a Section 216(b) collective action.

*See, e.g., Saunders*, 2014 U.S. Dist. LEXIS 17480 at \*23-24; *Prescott*, 729 F. Supp. 2d at 264; *Kane*, 138 F. Supp. 2d at 214; *Wise*, 2006 U.S. Dist. LEXIS 97992, at \*2; *Evans v. Lowe's Home Ctrs., Inc.,* 2004 U.S. Dist. LEXIS 15716, at \*6 (M.D. Pa. June 17, 2004) ("[t]ypically, the first step results in an automatic conditional certification because of the relatively light standard and minimal evidence"). "At the second stage, the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." *Hertz*, 624 F.3d at 555.

Particularly, as courts, including Courts of Appeals, have recognized, specifically in retail misclassification cases, "similarly situated" at the first stage does not mean (as defendants often true to argue) effective identicality as to the merits of the alleged FLSA allegation. Rather, the plaintiff only needs to show that there is, as now-Second Circuit Judge Gerald Lynch stated in a leading decision, a "uniform business practice." *Damassia v. Duane Reade, Inc.,* 2006 U.S. Dist. LEXIS 73090, at \*18 (S.D.N.Y. Oct. 6, 2006). Citing *Damassia*, in the leading case of *Myers v. Hertz Corp.* (followed by, for example, the Third Circuit in *Symczyk*, 656 F.3d 189 at 194, and *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536 n.4 (3d. Cir. 2012)), the Second Circuit explained that:

> In a FLSA exemption case, plaintiffs accomplish this by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme.

624 F. 3d at 556 (citing *Morgan*, 551 F.3d at 1259); *see also Jacob v. Duane Reade, Inc.*, 2012 U.S. Dist. LEXIS 11053, at \*23 (S.D.N.Y. Jan. 27, 2012) (conditionally certified a retail store assistant manager case, and explained: "before the Court is not whether Plaintiffs and other ASMs were identical in all respects, but rather whether they were subjected to a common policy

to deprive them of overtime pay when they worked more than 40 hours per week"). As another court similarly wrote in another nationwide retail misclassification case:

> The defendants have admitted that they classify all AMs exempt and do not decide the exemption on a case-by-case basis. This admitted common policy, combined with the allegations and testimony of the plaintiffs here, is enough to make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."

*Stevens v. HMSHost Corp.,* 10-cv-03571, slip op. at 8 (E.D.N.Y June 15, 2012) (attached as Exhibit L), *aff'd* 2012 U.S. Dist. LEXIS 146150, at *5-6 (E.D.N.Y. Oct. 10, 2012) (conditionally certifying collective class) (Glasser, *J.*). In this Circuit, it is recognized that the "submission of additional affidavits beyond those of the named plaintiffs is not necessary to make a 'similarly situated' showing." *See, e.g., Trezvant*, 434 F. Supp. 2d at 45. Here, there are additional such affidavits (in addition to all the other evidence).

The merits of the claim – namely, that Dick's classification is wrong because the putative collective action members do not perform sufficient managerial work – is a determination that is not before this Court. *See, e.g. Damassia*, 2006 U.S. Dist. LEXIS 73090, at *15 ("courts need not resolve the merits in order to find plaintiffs and potential opt-in plaintiffs similarly situated for purposes of authorizing notice"); *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (merits of the case are irrelevant to the "similarly situated" test) (Sotomayor, *J.*); *Krstic v. J.R. Contr. & Envtl. Consulting*, 2010 U.S. Dist. LEXIS 9478, at *5 (D.N.J. Jan. 28, 2010) ("the merits of plaintiffs' claims need not be evaluated nor discovery completed for such notice to be approved and disseminated"); *Jason v. Falcon Data Com, Inc*., 2011 U.S. Dist. LEXIS 77352 at *5-6, *16 (E.D.N.Y. July 18, 2011) (holding that issues raised by individualized inquiries are more properly determined at the second stage and holding that argument common policy did not violate the law is a merits argument and unpersuasive at first-stage); *Parker v. NutriSystem*, 2008

U.S. Dist. LEXIS 74896, at *5 (E.D. Pa. Sept 26, 2008) ("At this early stage, we need not assess the merits of the plaintiffs' claims"); *Wright v. Lehigh Valley Hosp.& Health Network*, 2011 U.S. Dist. LEXIS 5363, at *12 (E.D. Pa. Jan. 20, 2011) ("More importantly, [the court's] role at this stage of the proceedings is not to weigh the merits of conflicting factual issues underlying the claims."); *Bishop v. AT&T Corp*., 256 F.R.D. 503, 507 (W.D. Pa. 2009) (in determining whether the plaintiffs have made a modest factual showing, the merits of the plaintiffs' claims are not addressed); *Goodman v. Burlington Coat Factory*, 2012 U.S. Dist. LEXIS 166910, at *24 (D.N.J. Nov. 20, 2012) (court refused to consider merits during first stage).

> The reason the standard at the first stage is low has been trenchantly explained:

> Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in, *see* 29 U.S.C. § 216(b), early certification and notice are favored in order to protect plaintiffs' rights. Thus, only a minimal evidentiary burden is imposed in order to satisfy the "similarly situated" requirement . . . . The heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated. It would not sensibly serve the purposes of a two-step scheme to impose on plaintiffs a heightened burden of proving that as-yet-unknown plaintiffs are similarly situated.

*Gortat,* 2010 U.S. Dist. LEXIS 35451, at *30, *35 (emphasis in original); *Parks v. Dick's Sporting Goods, Inc.*, 2007 U.S. Dist. LEXIS 20949, at *12 (W.D.N.Y. Mar. 21, 2007) (case involving same defendant as this case; court declined to apply fact-specific inquiry into job duties or other potentially distinguishing circumstances at conditional certification stage).

Once a court determines that potential collective action members are similarly situated, it "conditionally certifies" the collective action and notice is sent to potential collective action members, who may then elect to "opt in" under Section 216(b) by filing written consents. The case then proceeds as a collective action throughout the merits discovery process. *See, e.g., Prescott*, 729 F. Supp. 2d at 364.

**C.** *Plaintiffs' FLSA Claims Should be Conditionally Certified*

This Court should conditionally certify Plaintiffs' FLSA claims. The evidence here – not only from Rule 30(b)(6) admissions, but also evidence from eight Plaintiffs from six different states, as well as corporate documents – is substantially more than in most FLSA collective actions, particularly retail chain assistant store manager misclassification cases, including large multistate and national cases. *See, e.g., Goodman*, 2012 U.S. Dist. LEXIS 166910 (certifying a 44-state, 465 location ASM collective action based upon a single Rule 30(b)(6) deposition, three ASM depositions, two declarations and corporate documents akin to those here); *Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009) (conditional certification in nationwide FLSA collective action of over 8,000 Rite Aid ASMs, except those in California, based on plaintiff's pleadings, uniform job advertisements and the affidavits (no depositions) from ASMs); *Ferreira v. Modell's Sporting Goods, Inc.,* 2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012) (granting conditional certification in a similar multistate ASM misclassification case with deposition testimony from one plaintiff, several ASM declarations, and documentary evidence of uniform exemption policies); *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 228 (D. Conn. 2012) (approving a five-state assistant Price Rite store manager conditional certification and notice based upon five declarations (no depositions), one Rule 30(b)(6) deposition and corporate documents); *Indergit v. Rite Aid Corp.,* 2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 15, 2010) (approving notice to 8,400 nationwide (except California) Rite Aid store managers based upon three affidavits and corporate documents); *Parks v. Dick's Sporting Goods, Inc.,* 2007 U.S. Dist. LEXIS 20949 (W.D.N.Y. Mar. 21, 2007) (affirming conditional certification of 35-state, 275 store collective action of "Golf Pros" (as here, the level below store manager) based upon affidavits from five employees, a job posting, and an

organizational chart);  *McKee v. PetSmart, Inc.,* 2013 U.S. Dist. LEXIS 174123 (D. Del. Dec. 9,

2013) (certifying nationwide collective action of ASMs based upon four plaintiff depositions,

corporate documents and Rule 30(b)(6) depositions); *Heitzenrater v. OfficeMax, Inc.,* 2014 U.S.

Dist. LEXIS 13828 (W.D.N.Y. Feb. 1, 2014) (conditionally certifying nationwide (except

California) collective action of ASMs based upon plaintiff depositions, affidavits, and corporate

documents);  *Ravenell v. Avis Budget Car Rental, LLC.* 2010 U.S. Dist. LEXIS 72563, at *11-12

(E.D.N.Y. July 19, 2010) (certifying nationwide collective action of Avis shift supervisors (akin

to ASM position)).

     The quantum of evidence present here – the deposition testimony of two Plaintiffs

combined with the declarations from an additional six Plaintiffs, the admissions of Dick's

corporate witness, and the corporate documents set out above – plainly meet Plaintiffs' "lenient

burden" of "some evidence" demonstrating that the proposed collective is sufficiently similarly

situated to justify issuing notice.[15]

     No less significantly once, as here, a plaintiff meets her burden during the first stage,

courts refuse to consider a defendant's arguments that differences exist among the collective.

*See Johnson,* 802 F. Supp. 2d at 236 ("differences [among the collective] are best considered at

the second stage after discovery has provided 'a more extensive and detailed factual record'")

(citing *Morgan*, 551 F.3d at 1261); *Griffiths v. Fordham Financial Management,* 2013 U.S. Dist.

---

[15] Taken together, there can be no reasonable question to the contrary, and it was upon almost an identical showing (albeit with fewer corporate documents though more depositions) in *Stillman v. Staples, Inc.,* 2008 U.S. Dist. LEXIS 32853 (D.N.J. Apr. 22, 2008), that Judge Katherine Hayden conditionally certified a nationwide collective action (except in California), a decision that ultimately led to a trial and verdict in favor of the ASMs who joined the case.  *See id.* (certifying conditional collective action and notice based upon 15 plaintiff, opt-in, and corporate depositions and declarations); *see also Stillman v. Staples, Inc.,* 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (decision denying JNOV motions following collective action trial). The Klafter Olsen & Lesser firm was co-lead counsel in the *Staples* litigation (and in a number of the other cases cited herein).

LEXIS 72909, *8 (S.D.N.Y. May 22, 2013) (discounting defendant's contravening evidence); *Ruffin v. Avis Budget Car Rental, LLC,* 2012 U.S. Dist. LEXIS 89651, at *8-9 (D.N.J. June 28, 2012) ("Although [defendant] maintains that shift managers' duties and responsibilities differ depending on a number of factors including the location, location size, rental volume and geography, these variations are not evident in the job descriptions [defendant] promulgates.") (internal citations omitted); *Goodman*, 2012 U.S. Dist. LEXIS 166910, at *26 ("at this stage, the Court declines to consider the 38 declarations that [defendant] submits to show individual differences among the ASMs' actual duties…this inquiry necessarily addresses the merits of Plaintiffs' claim and is therefore premature"); *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F. 3d 1208, 1219 (11th Cir. 2001) ("different geographical locations" immaterial to similarly situated determination*); see also, e.g., Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 488 (S.D.N.Y. 2009) (defendants' contradictory affidavits were insufficient "to prevent Plaintiffs from meeting their 'minimal' burden of a 'modest factual showing' on its motion for conditional certification under FLSA."); *Jacob*, 2012 U.S. Dist. LEXIS 11053, at *22 (court declined to consider defendant's declarations which demonstrated "diversity of ASMs' job functions"); *In re Penthouse Executive Club Comp. Litig.*, 2010 U.S. Dist. LEXIS 114743, at *12 (S.D.N.Y. Oct. 27, 2010) (defendants' submission of competing affidavits "amounts to a premature request to make credibility determinations and factual findings, something that is inappropriate at the notice stage."); *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 179 (D. Conn. 2010) (refusing to consider defendant's declarations submitted in an effort to establish diversity among potential collective action members); *Alli v. Boston Market*, 2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) (same); *Creely v. HCR Manorcare*, 2011 U.S. Dist. LEXIS 61376, at *62-63

(N.D. Ohio June 9, 2011) (dismissing 35 "happy camper" declarations submitted by defendant as "of little use" in a Section 216(b) motion).

In short, Plaintiffs have plainly met their "lenient" burden for conditional certification of the misclassification claim before this Court – indeed, far from showing minimal evidence – there is substantial evidence of that "there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Hertz*, 624 F. 3d at 556 (internal quotations and citations omitted).  Particularly powerful – and what alone would suffice – are Dick's corporate representative's admissions that the job description and other corporate materials apply to all ASMs nationwide who are all, on a blanket basis, treated as exempt.  *See* page 3-4, 6-8, above.  *See also, e.g, Goodman*, 2012 U.S. Dist. LEXIS 166910, at *24-25; *Stillman*, 2008 U.S. Dist. LEXIS 32853, at *28.

Further, and while many of the Section 216(b) decisions in this Court look largely to declarations and affidavits, here, not only is there evidence adduced from the lengthy depositions of two Plaintiffs, but this motion is also supported by Dick's own corporate documents. *See, e.g., Ravenell*, 2010 U.S. Dist. LEXIS 72563, at *11-12 (court certified nationwide collective action of Avis shift supervisors (akin to ASM position), explaining: "Plaintiffs' argument is buttressed by Avis's own corporate documents, which reveal that all Avis shift managers, wherever located, were treated as part of a category of similarly situated employees"; decision followed by factually associated case *Ruffin,* 2012 U.S. Dist. LEXIS 89651, at *13); *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *36 (the plaintiff, like here, "has cited corporate documents indicating that store managers had similar duties, that decisions regarding the content of their job descriptions and their classification as exempt from the FLSA were made at the national corporate level, and

that [the employer] maintained a high degree of control over its store managers' daily tasks through nationwide corporate policies and procedures.")

Based on the foregoing, this Court should authorize court-supervised notice because the evidence adduced demonstrates that Dick's has a uniform policy and practice not to pay their ASMs overtime wages for hours worked over 40 in a workweek. Accordingly, and just as in the prior *Dick's* case, as well as the *Burlington Coat* case, the *Staples* case, the *Rite Aid* cases, the *Duane Reade* cases, the *Modell's* case, the *PRRC* (Price Rite) case, the *Avis* cases, etc., cited above*,* Section 216(b) conditional certification and notice for this ASM FLSA misclassification claim is proper here. A collective action is the most appropriate way to allow other ASMs to join the action to address the legality of Dick's common policy not to pay them overtime.

### D. *The Court Should Compel Dick's to Produce ASMs' Contact Information*

Should the Court grant Plaintiffs' Motion, Plaintiffs will meet and confer with Dick's on the form of notice to be sent and how it is disseminated. For Plaintiffs to provide similarly situated ASMs with notice of the action, as contemplated by the law and routinely done by courts, Plaintiffs request Dick's be ordered to produce the following within 21 days of its Order:

> A list, in electronic format, of all persons employed by Defendant as Hardlines Managers, Softlines Managers, and Sales Support Managers (except in California and New Mexico) from June 10, 2010, to the present including: names, addresses, telephone numbers, dates of employment, locations of employment, social security numbers, and work and personal e-mail addresses.

*See e.g., Hoffman-La Roche*, 493 U.S. at 170; *Saunders*, 2014 U.S. Dist. LEXIS 17480 at *26-27; *Perez*, 2013 U.S. Dist. LEXIS 115119, at *12; *Wise*, 2006 U.S. Dist. LEXIS 97992, at *2; *Kane*, 138 F. Supp. 2d at 214.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully submit that the Court should grant

this Motion, pursuant to 29 U.S.C. § 216(b), so that additional ASMs can be promptly notified of

their right to join this lawsuit.

Date:   March 7, 2014                        Respectfully submitted,
        Rye Brook, New York

_Fran L. Rudich_

_____

Fran L. Rudich
Seth R. Lesser*
Rachel E. Berlin*
Michael J. Palitz*
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:  (914) 934-9200

Marc S. Hepworth*
Charles Gershbaum*
David A. Roth*
Mathew A. Parker*
HEPWORTH, GERSHBAUM & ROTH, PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone:  (212) 545-1199

***Attorneys for Plaintiffs***

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Fran L. Rudich, hereby certify that a true copy of the above document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 7, 2014.

/s/ Fran L. Rudich
Fran L. Rudich
*Attorney for Plaintiffs*