**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

-------------------------------------------------------------X

CHERYL LAPAN, MICHELLE SHUTT, AARON
WILLIAMS, ANA TOTH, JOHN BOUCHARD, and
PATRICK KACZMARCZYK, individually and on
behalf of all other persons similarly situated,

        CIVIL ACTION

                Plaintiffs,

        Case No.: 1:13-cv-11390-RGS

        -against-

DICK'S SPORTING GOODS, INC.,

            Defendant.

-------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES AND FOR
<u>APPROVAL OF SERVICE PAYMENTS TO THE NAMED PLAINTIFFS</u>**

Seth R. Lesser
seth@klafterolsen.com
Fran L. Rudich
fran@klafterolsen.com
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573

Marc S. Hepworth
mhepworth@hgrlawyers.com
Charles Gershbaum
cgershbaum@hgrlawyers.com
David A. Roth
droth@hgrlawyers.com
HEPWORTH, GERSHBAUM & ROTH,
PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016

**ATTORNEYS FOR PLAINTIFFS**

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL ARGUMENT ........................................................................................ 1

       A.     Class Counsel's Request for an Award of Attorneys'
              Fees, Costs, and Expenses Should Be Approved ................................... 1

              1.     Size of Settlement/Number of Persons Benefitted ................. 7

              2.     Skill, Experience and Efficiency of the Attorneys ................ 8

              3.     Complexity and Duration of Litigation ................................. 9

              4.     Litigation Risks ....................................................................... 9

              5.     Amount of Counsel Time ...................................................... 10

              6.     Awards in Similar Cases ....................................................... 11

              7.     Public Policy Considerations ................................................ 11

       B.     Service Payments to the Named Plaintiffs Should Be Approved ................. 13

III.   CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945) .................................................. 11

*Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728 (1981) ...................................... 9

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ............................ 10

*Blum v. Stenson*, 465 U.S. 886 (1984) ..................................................................... 3, 6

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ................................................... 3, 4, 5

*Braun v. Wal-Mart, Inc.*, No. Court File 19-CO-01-9790,
    2009 Minn. Dist. LEXIS 332 (Minn. Dist. Ct. June 1, 2009) ........................... 6

*Caissie v. BK's Wholesale Club*,
    No. 08-30220-MAP (D. Mass. June 24, 2010) .................................... 6, 13, 14

*Capsolas v. Pasta Res. Inc.*, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ............... 6

*Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) ............................... 13

*Connolly v. Weight Watchers N. Am. Inc.*, No. 14-cv-01983-TEH,
    2014 U.S. Dist. LEXIS 102088, at *13 (N.D. Cal. July 21, 2014) ................... 15

*Costello v. Kohl's Illinois Inc.*, 1:13-cv-1359 (S.D.N.Y. Jan. 6, 2016) ..................... 6, 8

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317,
    2013 U.S. Dist. LEXIS 2658 (M.D. Pa. Jan. 7, 2013) ............................... 8, 15

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) ............................ 8

*Davis v. JP Morgan Chase & Co.*,
    No. 01-CV-6492L, slip op (S.D.N.Y. Oct. 11, 2011) ................................. 6, 13

*Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y. 1968) ............................................... 11

*Dooley v. Liberty Mutual Ins. Co.*, C.A. No. 01-11029-REK (D. Mass. 2005) ........... 6

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ............................... 15

*Flores v. Anjost Corp.,* 11 Civ. 1531,
    2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 29, 2014) ............................. 6

*Furtado v. Bishop*, 635 F.2d 915 (1st Cir. 1980) ...................................................... 6

*Guippone v. BH S&B Holdings, L.L.C.*, No. 09 Civ. 01029 (CM),
    2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) ............................................ 15

*In re Cendant Corp.*, 232 F. Supp. 2d 327 (D.N.J. 2002) ............................................................ 13

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    292 F. Supp. 2d 184 (D. Me. 2003) .................................................................................. 13

*In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99 (D.R.I. 1996) ...................................................... 3

*In re Lupron Mktg. & Sales Practices Litig.*, No. MDL NO. 1430,
    MASTER FILE NO. 01-CV-10861-RGS,
    2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005) .................................. 6, 10, 13

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) .................................... 6, 7, 13, 14

*In re RJR Nabisco Inc. Sec. Litig.*, M.D.L. Docket No. 818 (MBM),
    1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) .............................................. 11

*In re Stockeryale, Inc.*, No. Master File No. 1:05cv00177-SM,
    2007 U.S. Dist. LEXIS 94004 (D.N.H. Dec. 18, 2007) .................................................. 6

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
    268 F. Supp. 2d 907 (N.D. Ohio 2003) .......................................................................... 13

*In re Sumitomo*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................ 10

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995) ........................................................................................ 3, 4

*In re Tyco Int'l*, 535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................... 3, 6, 7, 13

*In re Volkswagen & Audi Warranty Extension Litig.*,
    784 F. Supp. 2d 35 (D. Mass. 2011) .......................................................................... 5, 13

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) ............................................................................ 12

*Kane v. Gage Merch. Servs.*, C.A. No. 00-40185-NMG (D. Mass. June 28, 2002) .................... 6

*Kiefer v. Moran Foods, L.L.C.*, No. 12-CV-756 (WGY),
    2014 U.S. Dist. LEXIS 106924 (D. Conn. July 31, 2014) ................................................ 8

*Lerma v. Wal-Mart*,
    No. CJ-2001-1395 (Dist. Ct. of Cleveland Cty. Okl. Mar. 16, 2001) ................................ 6

*Loughran v. USAA, Inc.*, C.A. No. 00-12387-RWZ (D. Mass. Oct. 19, 2002) ............................. 6

*Macone v. Pongratz*, C.A. No. 07-11360-PBS (D. Mass. Sept. 16, 2008) ..................................... 6

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................. 9, 10

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ..................................... 5

*Mazola v. May Dep't Stores Co.*, No. 97CV10872-NG,
    1999 WL 1261312 (D. Mass. Jan. 27, 1999) ..................................................... 6

*McLaughlin v. Liberty Mutual Ins. Co.*,
    C.A. No. 01-11029-REK (D. Mass. Dec. 21, 2005) ......................................... 6

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) ....................................... 9

*Mutuc v. Huntington Mem'l Hosp.*,
    Nos. BC288727, BC364972 (Cal. Sup. Ct. Dec. 23, 2008) ............................... 6

*New Eng. Carpenters Health Benefits Fund v. First Databank*,
    Civil Action No. 05-11148-PBS,
    2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) ................................. 13

*Parker v. Jekyll & Hyde Entm't Holdings., L.L.C.*, 08 Civ 7670 (BSJ) (JCF)
    2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb 9, 2009) ................................... 6

*Pavlidis v. New Eng. Patriots Football Club, Inc.*, 675 F. Supp. 707 (D. Mass. 1987) ............... 6

*Prasker v. Asia Five Eight L.L.C. (MGC)*, No. 08 Civ. 5811 (MGC),
    2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 4, 2010) ............................... 10, 12

*Phillips Petrol. Co. v. Shutts*, 472 U.S. 797 (1985) ..................................................... 12

*Sand v. Greenberg*, No. 08 Civ 7840 (PAC),
    2010 U.S. Dist. LEXIS 1120 (S.D.N.Y. Jan. 7, 2010) ................................... 12

*Sewell v. Bovis Lend Lease LMB, Inc. (RLE)*, No. 09 Civ. 6548 (RLE),
    2012 U.S. Dist. LEXIS 53556, (S.D.N.Y. Apr. 16, 2012)................................. 15

*Shahriar v. Smith & Wollensky Restaurant Group*, 659 F.3d 234 (2d Cir. 2011)........................ 15

*Thorn v. Bob Evans Farms, Inc.*, No. 12-cv-768 (S.D. Ohio Feb. 26. 2016) ................................ 6

*United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*,
    732 F.2d 495 (6th Cir. 1984) ..................................................... 12

*Volkswagen Group of Am., Inc. v. Peter McNulty Law Firm*
 (*In re Volkswagen & Audi Warranty Extension Litig.*),
 692 F.3d 4 (1st Cir. 2012) ............................................................... 5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ............................. 4

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ....................... 5

*Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997) ...................... 5

## FEDERAL RULES

Fed. R. Civ. P. 23 ....................................................................... 6, 8

Fed. R. Civ. P. 23(h) ................................................................... 2

Fed. R. Civ. P. 54(d)(2).................................................................. 2

## OTHER AUTHORITIES

*American Law Institute Principles of the Law of Aggregate Litigation*, § 3.13 (2010) ................ 4

## I.   <u>INTRODUCTION</u>

In connection with seeking final approval of the proposed settlement agreement ("Settlement Agreement")[1] between the parties, Plaintiffs Cheryl LaPan, Michelle Shutt, Aaron Williams, Ana Toth, John Bouchard, and Patrick Kaczmarczyk (collectively, "Plaintiffs") move this Court for an Order granting Class Counsel's application for an award of attorneys' fees, costs, and expenses, and for an order approving the payment of Service Awards to the Named Plaintiffs.  Defendant Dick's Sporting Goods, Inc. ("DSG") does not oppose this Motion.  For the reasons described below, the Court should approve Plaintiffs' Motion.

## II.   <u>LEGAL ARGUMENT</u>[2]

### A.   **Class Counsel's Request for an Award of Attorneys' Fees, Costs, and Expenses Should Be Approved**

The time and labor spent litigating and settling this case by Klafter Olsen & Lesser, Hepworth Gershbaum & Roth, Winebrake & Santillo, and Wexler Wallace (collectively, "Class Counsel") was significant and reasonable, and the benefits of such work to Plaintiffs and the members of the Settlement Classes are substantial and undeniable.[3]  Class counsel prosecuted this litigation on behalf of Plaintiffs for nearly two and one-half years before finally reaching the proposed Settlement on November 5, 2015.  After months of arms-length and good faith negotiations between counsel on both sides, the Settlement was reached with the assistance of an experienced, well-regarded mediator, Hunter Hughes, Esq.

---

[1]   Contemporaneous with the instant motion, the Parties have also filed their Joint Motion for Final Approval of Class and Collective Action Settlement and for Payment of the Claims Administrator's Costs and Expenses ("Joint Motion for Final Approval").  The Declaration of Seth Lesser is attached to the Joint Motion for Final Approval and the Affidavit of Stephanie Amin-Giwner of GCG, cited herein, is attached as Exhibit A to the Lesser Declaration.

[2]   A detailed description of this action, together with a summary of the settlement agreement, is included in the Parties' Joint Motion for Final Approval, at pages 1-7, which is incorporated by reference herein.

[3]   In actuality, the fee request is actually slightly less than the time value of the attorneys' time that went into the case.  *See* page 13, footnote 9, below.

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel seek an award of attorneys' fees in the amount of $3,333,333.33 or thirty-three and one-third percent (33 and 1/3%) of the amount of the Settlement (the "Total Settlement Amount"). *See* Declaration of Seth R. Lesser ("Lesser Decl.") ¶ 27, to compensate them for their work in vigorously litigating Plaintiffs' claims and, ultimately, recovering alleged unpaid wages for Plaintiffs and the members of the Settlement Classes.

Class Counsel also seek reimbursement of costs and expenses in the amount of $137,765.61. Class Counsel incurred these costs, which were necessary and reasonable, in the prosecution of this litigation. Lesser Decl. ¶ 44, HGR Decl. at 11 (Lesser Decl., Ex. B); Winebrake and Santillo Decl. ¶ 7 (Lesser Decl., Ex. C); Wexler Decl. at Wexler Lodestar (Lesser Decl., Ex. D). The expenses include filing fees, postage, on-line research, travel, deposition and transcripts costs, expert fees, and the fees connected with mediating this case to settlement. All of the expenses were incurred to benefit of the members of the Settlement Classes, and Class Counsel should be reimbursed for them.

Defendant does not oppose Class Counsel's application for attorneys' fees, costs and expenses.

The Settlement Notice sent to the members of the Settlement Classes, which was approved by the Court, provided that "Class Counsel will submit a motion to the Court seeking approval for an award of up to 33 1/3 percent of the Total Settlement Amount, plus an additional amount for incurred litigation expenses and costs." *See* Affidavit of Stephanie Amin-Giwner ("GCG Aff."), Ex. A (Notice) at 3. Not a single objection was received to Class Counsel's request for attorneys' fees, costs and expenses. Class Counsel contends that their request for attorneys' fees, costs and expenses is reasonable and is within the accepted range

2

typically awarded in contingency fee, common fund FLSA class and collective cases (*see* page 6, below).

"'An attorney who recovers a common fund for the benefit of others is entitled to 'a reasonable attorney's fee from the fund as a whole.'" *In re Tyco Int'l*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007) (*quoting Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *see also Blum v. Stenso*n, 465 U.S. 886, 900 n.16 (1984) (recognizing that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class").  "The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs."  *In re Thirteen Appeals of Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 n.6 (1st Cir. 1995) ("*Thirteen Appeals*").  Under the percentage method, the court has broad discretion to "shape the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation."  *Id.* at 305, 308.

In *Thirteen Appeals*, the First Circuit joined the "prevailing" majority of courts that have adopted the percentage of a common fund ("POF") as a basis for awarding fees. *Thirteen Appeals,* 56 F.3d at 308; *see also In re Fleet/Norstar Sec. Litig*., 935 F. Supp. 99, 108 (D.R.I. 1996).  As the First Circuit explained:

> In complex litigation – and common fund cases, by and large, tend to be complex – the POF approach is often less burdensome to administer than the lodestar method.  Rather than forcing the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended, the POF method permits the judge to focus on a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts . . .
>
> For another thing, using the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency.  Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement . . . If the POF method is utilized, a lawyer is still free to be inefficient or to drag her feet in pursuing settlement options – but, rather than being rewarded for this unproductive behavior, she will

likely reduce her own return on hours expended.

Another point is worth making: because the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace.  We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character."

*Thirteen* Appeals, 56 F.3d at 307 (internal quotations and citations omitted) (emphasis added).

Further, the First Circuit described the POF method as "offer[ing] significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace."  *Id.* at 308.  Yet another advantage of the POF method is that it "directly aligns the interests of the class and its counsel" because it incentivizes attorneys to create the largest common fund out of which payments to the class can be made.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (internal quotations and citations omitted).[4]

The Supreme Court has recognized that it is appropriate that attorneys' fees, costs and expenses be awarded on the entire settlement even though amounts to be paid to settlement class members who do not file claims will revert to Defendant.  *See Boeing*, 444 U.S. at 480-81.

---

[4]      Indeed, in perhaps the most serious consideration of current fee jurisprudence, found in the American Law Institute's recently adopted Principles of Aggregate Litigation, the percentage-of-the fund was recognized as the proper principle:

> (b)      Subject to subsection (c), a percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.  The court can consider using the "lodestar" approach as a cross-check, particularly when the value of the judgment or settlement is uncertain.

> (c)      Other than its use as a cross-check, or its use in cases seeking solely injunctive or declaratory relief, the lodestar method should be limited to:
> (1)      situations in which the fees will be awarded under a fee-shifting statute that requires the lodestar method, or
> (2)      cases in which the court makes a specific finding that the percentage method would be unfair or inapplicable based on the specific facts of the case.

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13(b), (c) at 248-49 (2010).

Courts in the First Circuit and elsewhere follow this well-established principle: "[T]he measurement [of attorneys' fees] should not be what benefits are claimed by the class but rather what benefits are made available by counsel to be claimed."  *See, e.g.*, *In re Volkswagen & Audi Warranty Extension Litig.*, 784 F. Supp. 2d 35, 47 (D. Mass. 2011) (internal citations and quotations omitted), *rev'd on other grounds sub nom. Volkswagen Group of Am., Inc. v. Peter McNulty Law Firm (In re Volkswagen & Audi Warranty Extension Litig.*), 692 F.3d 4 (1st Cir. 2012); *accord, e.g., Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) ("The entire [f]und, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court . . .  rul[ed] that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.") (quoting Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 14.03, at 14-14 (3d ed.1992)); *Williams v. MGM-PATHE Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar.").

While the award must reflect the entire settlement amount, there is no hard and fast rule mandating a certain percentage of a common fund that may reasonably be awarded as a fee.  The amount of any fee must be determined by the facts of each case.  "It is not the obligation of this court to set the fee at the lowest amount possible but rather to determine whether the fees sought are 'reasonable.'"  *In re Volkswagen*, 784 F. Supp. 2d at 47.  The ordinary contingency fee

arrangement is usually for one-third of the settlement fund.  *See Furtado v. Bishop*, 635 F.2d

915, 917 (1st Cir. 1980); *accord Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might

receive one-third of whatever amount the plaintiff recovers.") (Brennan, *J.*, concurring).

Class Counsel believe that their attorneys' fees request for 33 and 1/3% of the Total

Settlement Amount falls within the acceptable range for common fund cases in this Circuit, both

within the wage and hour context, as well as otherwise.  *See In re Stockeryale, Inc*., No. Master

File No. 1:05cv00177-SM, 2007 U.S. Dist. LEXIS 94004, at *21 (D.N.H. Dec. 18, 2007)

(awarding class counsel fees of 33% of $3,400,000 gross settlement fund, with expenses in

addition to fee award); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 (approving fee of 33

1/3%); *Mazola v. May Dep't Stores Co.*, No. 97CV10872-NG, 1999 WL 1261312, at *4 (D.

Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the

fund."); *Pavlidis v. New Eng. Patriots Football Club, Inc.*, 675 F. Supp. 707, 710 (D. Mass.

1987) (recognizing that fees in the 20%-50% range in common fund class actions are not

uncommon).  It is also in line with fee awards in this Circuit for FLSA/state law wage and hour

cases.[5]

---

[5]     *See, e.g., Caissie v. BJ's Wholesale Club*, No. 08-30220-MAP (D. Mass. June 24, 2010) (30% fee in $9.15 million settlement); *Macone v. Pongratz*, C.A. No. 07-11360-PBS (D. Mass. Sept. 16, 2008) (33% award in $966,000 wage and hour settlement); *Kane v. Gage Merch. Servs*, C.A. No. 00-40185-NMG (D. Mass. June 28, 2002) (one-third of $690,000 FLSA collective action settlement); *Loughran v. USAA, Inc.*, C.A. No. 00-12387-RWZ (D. Mass. Oct. 19, 2002) (one-third of $820,000 settlement fund in a FLSA collective action); *Dooley v. Liberty Mutual Ins. Co.*, C.A. No. 01- 11029-REK (D. Mass. 2005) & *McLaughlin v. Liberty Mutual Ins. Co.*, C.A. No. 01-11029-REK, (D. Mass. Dec. 21, 2005) (consolidated cases; awarding $1.8 million in counsel fees, which was 28% of $6.4 million settlement involving both FLSA collective actions and a Rule 23 Massachusetts overtime class claim).  Relevant decisions from other circuits include (out of many), *Thorn v. Bob Evans Farms, Inc.*, 12-cv-768, Order, Docket No. 219 (S.D. Ohio Feb. 26. 2016) (awarding 33% fee of $16.5 million FLSA/state wage and hour misclassification settlement); *Flores v. Anjost Corp.,* 11 Civ. 1531, 2014 U.S. Dist. LEXIS 11026, at *24-26 (S.D.N.Y. Jan. 29, 2014) (awarding 33 *1/3*% of $1,050,000 settlement); *Capsolas v. Pasta Res. Inc.*, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (33.33% fee in $5.25 million settlement);*Braun v. Wal-Mart, Inc.*, No. Court File 19-CO-01-9790, 2009 Minn. Dist. LEXIS 332 (Minn. Dist. Ct. June 1, 2009) (38% of a $54.25 million dollar settlement); *Mutuc v. Huntington Mem'l Hosp.,* Nos. BC288727, BC364972 (Cal. Sup. Ct. Dec. 23, 2008) (30% of a $36 million dollar settlement); *Lerma v. Wal-Mart*, No. CJ-2001-1395 (Dist. Ct. of Cleveland Cty. Okl. Mar. 16, 2001) (40% of a $42.5 million dollar settlement); *see also Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, slip op (S.D.N.Y. Oct. 11, 2011) (one third of $42 million settlement fund in FLSA and state wage and hour case); *Costello v. Kohl's Illinois Inc.,* 1:13-cv-1359, (S.D.N.Y. Jan. 6, 2016) (one third of $4 million settlement fund

The First Circuit does not provide a definitive list of factors for the fee determination.

*See In re Lupron Mktg. & Sales Practices Litig.*("*Lupron I*"), No. MDL NO. 1430, MASTER

FILE NO. 01-CV-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *12 (D. Mass. Aug. 17, 2005)

("[T]he First Circuit does not mandate the weighing of any specific set of factors in assessing a

common fund fee request . . . ."); *see also In re Tyco Int'l*, 535 F. Supp. 2d at 265-66 ("the First

Circuit does not require courts to examine a fixed laundry list of factors").  However, relying on

factors employed in other Circuits, courts within this District have applied the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill,
> experience, and efficiency of the attorneys involved; (3) the complexity and
> duration of the litigation; (4) the risks of the litigation; (5) the amount of time
> devoted to the case by counsel; (6) awards in similar cases; and (7) public policy
> considerations, if any.

*Lupron*, 2005 U.S. Dist. LEXIS 17456, at *12; *see also In re Relafen Antitrust Litig.*, 231 F.R.D.

at 79 (utilizing a substantially similar formulation but adding "the presence or absence of

substantial objections by members of the class to the settlement terms and/or fees requested by

counsel"). Class Counsel believe that the application of each of these considerations supports the

requested amount for attorneys' fees, costs and expenses in this case.

### 1.      Size of Settlement/Number of Persons Benefitted

The Settlement Amount in this action is the substantial fund of $10 million.  Notice was

mailed to 2,307 Class Members, and as of the March 22, 2016 Claim Form submission deadline,

Garden City Group the Settlement Administrator received 751 unique Claims Forms.  GCG Aff.

¶¶ 7-12.  This factor favors reasonableness.

---

in FLSA and hybrid wage and hour case).

### 2.      Skill, Experience and Efficiency of the Attorneys

Class Counsel respectively submit that the $10 million Settlement Amount was achieved, in part, because of the level of experience and reputation of counsel.[6] *See, e.g.*, *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (recognizing Klafter Olsen & Lesser as "experienced in handing wage and hour class actions and hav[ing] knowledge of the applicable law"); *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658, at *45 (M.D. Pa. Jan. 7, 2013) (stating that Class Counsel (which included Klafter Olsen & Lesser as lead counsel, and Hepworth Gershbaum & Roth and Winebrake & Santillo as additional Class Counsel) "are experienced wage and hour class action litigators with decades of accomplished complex class action experience between them and that the Class Members have benefitted tremendously from able counsel's representation"); *Costello v. Kohl's Illinois Inc.*, 1:13-cv-1359 (S.D.N.Y. Jan. 6, 2016), Dkt. No. 185 (FLSA and State law misclassification case; finding that Hepworth, Gershbaum & Roth "[a]re qualified and experienced"); *Kiefer v. Moran Foods, LLC*, No. 12-CV-756 (WGY), 2014 U.S. Dist. LEXIS 106924, *49 (D. Conn. Aug. 5, 2014) (Winebrake & Santillo and co-counsel are "experienced class action employment lawyers with good reputations among the employment law bar"); *Glancy-Gernon Funeral Homes, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 09 Civ. 1008 (S.D. Ill.) (at preliminary approval hearing of $41.3 million settlement, court stated: "I admire very much the work that you have done in this case, and you have taught me something. I think I'm more knowledgeable and a better judge because I've had contact with you.").

---

[6]      Before commencing this action, Class Counsel thoroughly investigated the merits of the potential claims and defenses.  Counsel focused their investigation and legal research on the underlying merits of the potential claims under the FLSA, the damages to which Plaintiffs were entitled, and the propriety of Rule 23 class and FLSA collective action certification.  Class Counsel interviewed Plaintiffs to determine the hours that they worked, the wages they were paid, Defendant's compensation practices, the nature of an ASM's job duties and responsibilities, and other relevant information.  Class Counsel also obtained and reviewed documents from Plaintiffs related to their employment with Defendant.

Defendants, in turn, were ably represented by prominent law firms and attorneys with specific experience and well-known expertise in this type of litigation. "The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002). Thus, this factor weighs in favor of granting the requested fee.

### 3.      Complexity and Duration of Litigation

Plaintiffs' claims had all the hallmarks of complex and extended FLSA and state law litigation. As the Supreme Court has recognized, "FLSA claims typically involve complex mixed questions of fact and law . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 743, *rev'd on other grounds*, 450 U.S. 728 (1981). The risks of proceeding with this case have been extensively addressed in the parties' Joint Motion for Final Approval at 13-16. In addition, as Class Counsel are also well aware, FLSA and Class wage and hour litigation involving similar claims can lead to complex and time consuming legal and factual adjudications. *See also, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) (encompassing over seven years of litigation and two trials).[7] This factor weighs in favor of reasonableness and the Court should award Class counsel the requested fees and costs.

### 4.      Litigation Risks

In addition to the litigation risks set forth in the Joint Motion for Final Approval, the risk

---

[7]      Class Counsel are particularly well aware of the risks and delays attendant upon wage and hour misclassification cases. For example, in January 2009, Mr. Lesser and Ms. Rudich of Klafter Olsen & Lesser tried an assistant manager retail chain store misclassification case. That opt-in FLSA collective action on behalf of 342 employees involved discovery, consumed six weeks of trial time, and cost hundreds of thousands of dollars in expenses; the post-trial motion practice that followed was extensive and included motions for judgment notwithstanding the verdict and for decertification of the collective. *See* Lesser Decl. ¶ 47.

of not receiving any attorney fees and costs is another risk faced by Class Counsel, and one for which they should be compensated. There was the substantial risk of nonpayment in the event these claims were dismissed. *See Maley*, 186 F. Supp. 2d at 372 ("Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated.") (internal quotations and citations omitted); *In re Sumitomo*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (class counsel not only undertook risks of litigation, but advanced own funds and financed litigation). The litigation risks, in particular the risk of nonpayment, support the fee application. Moreover, "[m]any cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award." *Lupron*, 2005 U.S. Dist. LEXIS 17456, at *15-16 (internal quotations and citations omitted). Class Counsel undertook Plaintiffs' claims on a strictly contingent-fee basis, and invested a substantial amount of time and money to prosecute the claims, with no guarantee of compensation or recovery of out-of-pocket costs. Thus, Class Counsel should receive adequate compensation now.

### 5.    Amount of Counsel Time

Class Counsel have expended significant resources litigating Plaintiffs' claims. Specifically, as here relevant, the law firms making this request for attorneys' fees have expended over 5,500 hours in investigating, filing, litigating and negotiating and settling of Plaintiffs' claims. Lesser Decl. ¶ 35. Thus, this factor weighs in favor of granting the fee request.[8]

---

[8]      In addition, there is still work yet to be done that will be necessary to effectuate the administration of the Settlement which is recognized as necessary and compensable. Lesser Decl. ¶ 37; *see also Beckman v. KeyBank*, *N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Parker v. Jekyll & Hyde Entm't Holdings., L.L.C.*, 08 Civ 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762, at *7-8 (S.D.N.Y. Feb 9, 2009) ("[A]s class counsel is likely to expend significant effort in the future

### 6.      Awards in Similar Cases

The request by Class Counsel for an award of 33 and 1/3% of the $10 million Total

Settlement Amount is fully supported by awards in class actions involving common funds,

including, specifically, wage and hour class and collective action settlements, as shown at pages

6 and footnote 5, above.

### 7.      Public Policy Considerations

Important public policy considerations also support approval of the requested fees, costs

and expenses.  In considering attorneys' fees, courts are mindful that such awards serve the dual

purpose of encouraging representatives acting as private attorneys' general to seek redress for

damages to entire classes of persons and discouraging future misconduct of a similar nature.

*Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825

(2d Cir. 1970) ("Every successful suit duly rewarded encourages other suits to redress

misconduct and by the same token discourages misconduct which would occasion suit.")

(internal quotations and citation omitted); *see also In re RJR Nabisco Inc. Sec. Litig.*, M.D.L.

Docket No. 818 (MBM), U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ("The prospect of

handsome compensation is held out as an inducement to encourage lawyers to bring such suits")

(quoting *Dolgow*, 43 F.R.D. at 494).

The FLSA and its state law analogues are remedial statutes designed to protect the wages of

workers.  *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's

---

implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will
diminish over time.").  In Class Counsel's experience, administering class settlements of this nature and size requires ongoing
commitment. For example, Class Members have already had questions regarding the Settlement, and, based upon experience,
such calls will continue through and beyond final approval as Class Members report lost checks and request new ones, raise
questions about tax consequences and generally call for advice. Lesser Decl. ¶ 37.  There will, in addition, also be time spent
overseeing the finalization of the claims process through The Garden City Group. *Id.*

objective, which is to ensure that every employee receives "a fair day's pay for a fair day's work").  Class Counsel contend that adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of these statutes.  Such adequate compensation is consistent with the FLSA's purpose of eliminating "labor conditions detrimental to the maintenance of the minimum standard living" and "insur[ing] effective access to the judicial process" by removing the significant barrier of paying legal fees and out-of-pocket costs.  *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501-02 (6th Cir. 1984) (internal quotations and citations omitted); *see also Prasker v. Asia Five Eight L.L.C.* (*MGC*), No. 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010) ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.").  Indeed, the FLSA's fee shifting provisions embody a public policy concern to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.  But for the separate provision of legal fees, many violations . . . would continue unabated and uncorrected." *Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010).  Providing a 33 1/3% attorneys' fee award serves this policy.  Finally public policy also favors Class Counsel's request because the Settlement resolves a putative class action, and class actions are recognized as an invaluable safeguard of public rights.  *See Phillips Petrol. Co. v. Shutt*s, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964).  Thus, this factor supports the fee request.

Since each of the relevant factors commonly viewed as required indicates that Class

Counsel's request for attorneys' fees, costs, and expenses, is reasonable, the request should be

approved.[9]

### B.     Service Payments to the Named Plaintiffs Should Be Approved.

Service Payments for "class representatives" have "an important function in promoting

class action settlements." *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 98

(D.N.H. 2005); *accord In re Relafen Antitrust Litig.*, 231 F.R.D. at 82; *see also In re Compact*

*Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a

---

[9]     "The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 81 (citations omitted).  It can be used, however, as "a check or validation of the appropriateness of the percentage of funds fee, but is not required." *New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148-PBS, 2009 U.S. Dist LEXIS 68419, at *8 (D. Mass. Aug. 3, 2009) (internal quotations and citation omitted).  Should the Court utilize the lodestar method as a cross check, the Court "is not required to wade through every billed hour, every claimed service, and charged expense, effectively conducting an audit of plaintiffs' fee petition and then issue a telephone book of minute findings." *In re Volkswagen*, 784 F. Supp. 2d at 47 (citation omitted).  The lodestar is calculated by multiplying the number of hours incurred by the hourly rate for the services rendered. *In re Tyco Int'l*, 535 F. Supp. at 265 n.12.

Here, Class Counsel's lodestar totals $3,435,421.50. *See* Lesser Decl. ¶ 38.  This results in a very slightly negative multiplier of 0.97. Respectfully, Class Counsel submit that obtaining less than their lodestar – even in a small degree – is certainly not unreasonable, and reflects and compensates them for the risks of the case given the contingent nature of the expected compensation for services rendered, the consequent risk of non-payment at the time of filing the suit, the quality of representation, and the results achieved by the Settlement. Such a request, Class Counsel submits, is exceedingly reasonable.  It is particularly so because even were it a positive multiplier, it would still remain decidedly acceptable. *See generally In re Cendant Corp.,* 232 F. Supp. 2d 327, 341-42 (D.N.J. 2002) ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 938 n.45 (N.D. Ohio 2003) (relying on an analysis of over 1,100 cases to conclude that "the courts' effective multipliers averaged: (a) 3.89 across all 1,120 cases; *see also Davis v. JP Morgan Chase & Co*., No. 01-CV-6492L, slip op. 17 (S.D.N.Y. Oct. 11, 2011) (5.3 multiplier on one third fee of $42 million wage and hour overtime settlement; also citing other authorities).  And this multiplier is within, or lower than, many lodestar multipliers approved by the courts in this Circuit in many others. *Conley v. Sears, Roebuck & Co.,* 222 B.R. 181, 187 (D. Mass. 1998)) (approving lodestar multiplier of 8.9); *In re Tyco*, 535 F. Supp. 2d at 271 (multiplier of 2.697); *In re Relafen*, 231 F.R.D. at 82 (multiplier of 2.02); *New Eng. Carpenters,* 2009 U.S. Dist. LEXIS 68419, at *10 (multiplier of 8.3).  In fact, this Court's largest FLSA/state wage and hour settlement (before this case) had a multiplier that exceeded 5x. *See, e.g., Caissie v. BJ's Wholesale Club,* No. 08-30220-MAP (D. Mass. June 24, 2010) (5x+ multiplier and 30% fee in a $9.15 million FLSA/state law wage and hour class and collective action settlement).  Thus, even were it to be considered, the lodestar cross check would support a finding that the requested amount of attorneys' fees, costs and expenses is reasonable.

named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit").

Here, the Settlement Agreement provides for Class Counsel to seek Service Payments for the Named Plaintiffs, as follows: (i) $10,000 for named Plaintiffs, Cheryl LaPan, Michelle Shutt and Aaron Williams; and (ii) $7,500 for named Plaintiffs, Ana Toth, John Bouchard and Patrick Kaczmarczyk.  These amounts are consistent with those that have been granted to class representatives who were willing to put their name forward to represent others similarly situated within this Circuit.  *See*, *e.g.*, *Caissie v. BJ's Wholesale Club,* No. 08-30220-MAP (D. Mass. June 24, 2010) ($10,000 service awards approved in connection with $9.15 million settlement of FLSA/state law wage and hour class and collective action); *In re Relafen,* 231 F.R.D. at 82 (approving service awards in the amount of $8,000 for each named consumer plaintiff).[10]

The Named Plaintiffs provided support to this litigation by agreeing to step forward and serve as the representatives for the Classes, and they fulfilled their commitments in that regard. Each assisted Class Counsel materially with the case, provided information and documents to allow Class Counsel to develop their claims and those of the Class members, assisted in the preparation of the complaints and had many telephone calls with Class Counsel.  They also responded to written discovery and when noticed by the Defendant for a deposition prior to the Settlement, they sat for a deposition.  Lesser Decl. ¶ 5.

Further, Class Counsel posits that the payment of service awards to the Named Plaintiffs is warranted because stepping forward to have one's name on a wage and hour complaint involves a certain degree of risk of retaliation.  Class Counsel stresses there is no evidence that DSG has engaged, or would engage, in retaliation or would countenance retaliation in any form

---

[10] The terms incentive and service payments or awards are used interchangeably by litigants and the courts.

against the individuals who stepped forward in this case.  However, courts have recognized that, "[e]ven where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."  *Guippone v. BH S&B Holdings, L.L.C.* (*CM*), No. 09 Civ. 01029 (CM), 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-88 (W.D.N.Y. 2005) ("Although this Court has no reason to believe that [defendant] has or will take retaliatory action towards [plaintiffs], the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").[11]

Accordingly, Class Counsel's request for Service Payments to the Named Plaintiffs is reasonable and should be approved.

## III.   <u>CONCLUSION</u>

Due to the foregoing, Plaintiffs respectfully request that this Court grant, in its entirety, Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Costs and Expenses and for Approval of Service Payments to the Named Plaintiffs.

Dated: March 25, 2016
      Rye Brook, NY

                                 Respectfully submitted,

                                 /s/ *Seth R. Lesser*
                                 Seth R. Lesser
                                 seth@klafterolsen.com
                                 Fran L. Rudich
                                 fran@klafterolsen.com

---

[11] *See also, e.g.*, *Connolly v. Weight Watchers N. Am. Inc.*, No. 14-cv-01983-TEH, 2014 U.S. Dist. LEXIS 102088, at *13 (N.D. Cal. July 21, 2014) (named plaintiffs assume "the risk of being stigmatized or disfavored by their current or potential future employers by suing their employer"); *Sewell v. Bovis Lend Lease LMB, Inc.* (*RLE*), No. 09 Civ. 6548 (RLE), 2012 U.S. Dist. LEXIS 53556, at *42 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees … fac[ed] potential risks of being blacklisted as 'problem' employees."); *see also Shahriar v. Smith & Wollensky Restaurant Group*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA right."); *see Craig*, 2013 U.S. Dist. LEXIS 2658, at *50 (citing *Shahriar* to support service awards).

KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
Facsimile: (914) 923-9220
www.klafterolsen.com

Marc S. Hepworth
mhepworth@hgrlawyers.com
Charles Gershbaum
cgershbaum@hgrlawyers.com
David A. Roth
droth@hgrlawyers.com
HEPWORTH, GERSHBAUM & ROTH,
PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801

**ATTORNEYS FOR PLAINTIFFS**